**SUPREME VIDEO, INC.,**
Plaintiff–Appellant,

v.

**Steven SCHAUZ, James Thome, and One or More John Does, Defendants–Appellees.**

No. 93–1060.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1993.

Decided Feb. 10, 1994.

Jeff S. Olson (argued), Julian, Olson & Lasker, Madison, WI, for plaintiff-appellant.

Gregg T. Heidenreich (argued), Schuch & Stilp, Milwaukee, WI, for defendant-appellee.

Before WOOD, Jr., FLAUM, and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Three years ago, this court upheld the constitutionality of Wisconsin's current obscenity statute, Wis.Stat. § 944.21. *See Kucharek v. Hanaway,* 902 F.2d 513, 515 (7th Cir.1990), *cert. denied* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Shortly thereafter, City of Oshkosh District Attorney Joseph Paulus began discussing with detective Michael Novotny the possibility of initiating investigations of area video stores for violations of Section 944.21. Under the supervision of Chief of Police James Thome, Detective Steven Schauz assisted in an investigation of Supreme Video.

As instructed by Paulus, Schauz purchased three videotapes from plaintiff Supreme Video on April 2, 1991. The first, *Alex Derenzy's Juicy Lucy,* was a single-issue, non-serial work. The other two, *Wall to Wall the Way You Like It* and *Home Movie Productions,* were individual volumes in two separate series of movies that were clearly identified as different films, each with distinctive cover designs. Schauz then viewed the three movies, summarizing their contents in a report to Paulus. Paulus reviewed the report and concluded that probable cause existed for a violation of the Wisconsin obscenity statute. Paulus then advised Novotny and Schauz that in light of the decision of this court upholding Section 944.21, and the subsequent denial of certiorari by the United States Supreme Court, the investigation should proceed. Around that same time, a yet unknown individual advised Schauz that he should seize all volumes of movies for which he had reviewed a single copy.

Those investigating Supreme Video then prepared a search warrant, supported by an affidavit signed by Schauz, which they submitted for review to Judge William Crane of the Circuit Court for Winnebago County. Neither the warrant nor the affidavit stated that any of the movies were parts of a series, nor did Schauz inform Judge Crane on the record of his intention to seize copies of all volumes of the films. After reviewing the warrant and supporting materials, Judge Crane signed the warrant without modification.[1]

On April 6, 1991, Schauz and other Oshkosh Police Department officers executed the search warrant. The officers informed the employee on duty at Supreme Video that they were seizing all *Wall to Wall the Way You Like It, Juicy Lucy,* and *Home Movie Productions* movies. The officers then seized pertinent business records and the

---

1. The warrant allowed Detective Schauz to seize copies of the cassettes Wall to Wall the Way You Like It, Alex Derenzy's Juicy Lucy and Home Movie Productions as well as the records, documents and writings relating to the original receipt, rental and/or sale, retention and/or storage of the above-named video cassette tapes, including any duplicate copies thereof, by said business establishment, direc-

tory, source book or guide which contains specific reference to or representation of the above-named video cassette tapes, advertisement, literature, flyers, pamphlets, pictures, posters, lists and notebooks containing specific reference to or representation of the above-named video cassette tapes or any other evidence which may constitute a violation of Sec. 944.21, Wis.Stats.

following tapes: (1) one copy of *Wall to Wall the Way You Like It* volumes 1–4, 8–15, 17, and 18; (2) one copy of *Home Movie Productions* editions 1 and 6–8; (3) two copies of *Home Movie Productions* editions 3 and 5; and (4) three copies of *Home Movie Productions* editions 2 and 4.

Counsel for Supreme Video reacted by demanding the return of its business records once copied, duplicate videotapes, and any item seized without prior approval from the Wisconsin Attorney General. Supreme Video also requested an adversarial hearing on the issue of whether any of the videotapes violated Section 944.21. Supreme Video communicated these demands by letter to Schauz, Thome, Paulus, and the city clerk. The City responded by returning all business records and all duplicate tapes as well as some originals, but the City retained single copies of twelve videotapes. The City has neither held a hearing on the nature of the tapes nor charged Supreme Video with any Section 944.21 violations.

Supreme Video filed this suit on July 15, 1992, claiming that Schauz and Thome violated its First, Fourth, and Fourteenth Amendment rights by conducting an illegal search and seizure.[2] Supreme Video sued Schauz and Thome in their personal capacities, seeking compensatory and punitive damages, and in their official capacities, seeking injunctive and declaratory relief. The defendants moved for summary judgment, arguing that qualified immunity protected them in their personal capacities and that no other relief was appropriate.

The district court granted summary judgment in favor of the defendants on all claims. The court held that qualified immunity protected Schauz and Thome in their personal capacities because, among other things, it was objectively reasonable to believe that "copies" included "volumes." Additionally, the court held that the remedy of an injunction was unavailable to Supreme Video against Schauz and Thome in their official capacities because Supreme Video failed to pursue available state procedures for securing the return of the movies. *See* Wis.Stat. § 968.20(1). Supreme Video now contests both of these conclusions.

### A. Personal Capacities

■ Any person who, under color of state law, deprives another person of a right, privilege, or immunity secured by the United States Constitution is subject to personal liability for the deprivation. 42 U.S.C. § 1983. State officials, however, can raise qualified immunity as a defense to Section 1983 actions. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (officers enforcing defective search warrants may assert qualified immunity defense). Officials are immune from civil damages if their actions were ob-

2. Supreme Video raised the following claims as separate constitutional violations:
   1. The defendants violated the plaintiff's Fourth Amendment rights by seizing property they knew or should have known exceeded the scope of the search warrant;
   2. Defendant Schauz made material omissions and misrepresentations in his sworn application for the search warrant in violation of plaintiff's Fourth Amendment rights;
   3. The defendants' failure to grant plaintiff a prompt, post-seizure, judicially supervised adversary hearing regarding the alleged obscenity of the seized materials, and their execution of the warrant with the knowledge that they could not provide such a hearing, violated plaintiff's rights under the First, Fourth and Fourteenth Amendments;
   4. The defendants violated the Fourth Amendment when they applied for and executed the search warrant before the formal dissolution of Judge Stadtmueller's injunction issued in the *Kucharek* case;
   5. The defendants did not request or allow the judge to examine the allegedly obscene pictures or passages within the context of the work [in which] they appear;
   6. The defendants obtained a search warrant which authorizes an unreasonable seizure within the meaning of the Fourth Amendment because it provides for seizure of all copies of the allegedly obscene tapes, not just the minimum needed for evidentiary purposes;
   7. The defendants' wrongful actions constitute an unlawful prior restraint upon free expression protected by the First Amendment; and
   8. The defendants violated state law and plaintiff's Fourth Amendment rights by executing the warrant without first obtaining permission from the State Attorney General.

   *Supreme Video v. Schauz*, 808 F.Supp. 1380, 1386 (E.D.Wis.1992). Supreme Video's appeal is based on the first and second of these contentions only.

jectively reasonable, meaning that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the context of police officers who have executed an unconstitutional search or seizure, we must ask "whether a reasonably well-trained officer would have known that the search [or seizure] was illegal despite the magistrate's authorization." *United States v. Leon,* 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 3420 n. 23, 82 L.Ed.2d 677 (1984), *quoted in Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986).

The requirement that search warrants particularly describe the things to be seized is a bedrock of Fourth Amendment jurisprudence, and when the basis for a seizure is the ideas contained therein, "the most scrupulous exactitude" is required in crafting the warrant. *See Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965); *see also In re Search of Kitty's East v. United States,* 905 F.2d 1367, 1372–73 (10th Cir.1990). There is more to demonstrating that the law was clearly established, however, than alleging the violation of broad constitutional rights. *Schertz v. Waupaca County,* 875 F.2d 578, 583 (7th Cir.1989). Our inquiry must be fact intensive, not one of generalities. *Rakovich v. Wade,* 850 F.2d 1180, 1202 (7th Cir.), *cert. denied* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). The two specific issues we must confront in this case are first, whether it was clearly established at the time of the seizure that the reference to the title of a series, rather than each individual volume number, is insufficiently particular to permit seizure of individual volumes within the series; and second, whether

Schauz' failure to inform the magistrate judge that his affidavit was referring to the title of the series, rather than the specific title of a movie, exposes him to personal liability.

### 1.

■ Interestingly, both Supreme Video and Schauz and Thome have focused solely on the issue of whether at the time Schauz executed the search warrant, it was clearly established that an authorization to seize "copies" of *Wall to Wall the Way You Like It* and *Home Movie Productions* did not permit seizing multiple "volumes" of the same. Assuming *arguendo* that "copies" and "volumes" are distinct concepts when referring to video cassettes, a more central question remains: whether it was clearly established that the reference to the title of a series, rather than each individual volume number, is insufficiently particular to permit seizure of individual volumes within the series.

An example illustrates why we must address this issue first. In the *Rocky* series, the movies are entitled *Rocky, Rocky II, Rocky III,* etc. A warrant permitting only the seizure of all copies of *Rocky* would allow the officer to seize *Rocky,* but not *Rocky II* and *Rocky III*—*Rocky* is the name of a specific movie, and the "*Rocky* series" should be identified as such to permit seizing all movies within the series.

In this case, however, the movie titles are *Home Movie Productions, Edition 1, Home Movie Productions, Edition 2, Home Movie Productions, Edition 3,* etc. The warrant permits seizure of *Home Movie Productions,* but no individual movie by that title exists [3]—each movie, even the first, is followed by a volume number.[4] The same is true of

---

**3.** One could argue that the title of each movie is *Home Movie Productions,* and that the edition number is not part of the title. Our reasoning, however, remains constant—in both cases the language of the warrant either would encompass every movie or, if insufficiently particular, would reach none of the films.

**4.** All of the evidence in the record supports this conclusion, including Supreme Video's response to the defendants' proposed findings of fact. In that document, Supreme Video stated:

> Detective Schauz did not purchase single videocassettes whose complete titles were *Wall to Wall the Way You Like It,* and *Home Movie Productions,* because those titles represent movie series. Each volume of *Wall to Wall* and each edition of *Home Movie Productions* bears an identifying volume or edition number in addition to the series title.

Supreme Video's statement is further bolstered by the post-seizure report Schauz prepared, in which he lists one of the movies seized as volume one of *Wall to Wall,* and another movie as edition one of *Home Movie Productions.*

*Wall to Wall the Way You Like It.* Thus, the warrant either encompassed all of the movies or none of them, and the "copies" versus "volumes" concern therefore is secondary.

Schauz' belief that the warrant permitted seizure of all movies within the two named series was objectively reasonable. This is not a case of a warrant permitting seizure of *Home Movie Productions, Edition 1,* and *Home Movie Productions, Edition 1, Home Movie Productions, Edition 2,* and *Home Movie Productions, Edition 3* being seized.[5] The warrant gives the titles of two movie series without referring to a specific volume number, leaving open the reasonable interpretation that seizure of all volumes within the two series was permissible. Additionally, this is not a case of a warrant permitting seizure of *Star Wars,* and *Star Wars, The Empire Strikes Back,* and *Return of the Jedi* being seized. The titles of movies in the *Home Movie Productions* and *Wall to Wall the Way You Like It* series are differentiated within each series only by volume numbers, and the warrant omits any references to volume numbers. An objectively reasonable officer could have reasoned as follows: (1) the warrant authorizes the seizure of *Wall to Wall the Way You Like It* and *Home Movie Productions;* (2) the only movies with those titles each are followed by a volume number; so therefore (3) *Wall to Wall the Way You Like It* and *Home Movie Productions* each refers to the entire series, allowing seizure of all movies within each series.[6]

No controlling law at the time Schauz executed the seizure clearly established that such an inference would be improper. In fact, the most directly relevant case from this circuit leans toward the opposite conclusion. In *Sequoia Books, Inc. v. McDonald,* 725 F.2d 1091 (7th Cir.), *cert. denied* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984), we upheld the constitutionality of a search warrant that authorized seizure of any magazines, movies, and videotapes containing depictions of sexual activities described in the warrant, but that failed to list the actual titles or issues of the same. *Id.* at 1094 ("Nor would it be feasible to [require] that the warrant name the particular issues of the particular magazines to be seized. The defendant officers would have had to buy every issue of every magazine (and every movie and videotape) that they thought obscene...."). Although *Sequoia* did not involve a reference in a warrant to the title of a series without identifying specific volume numbers, its conclusion that warrants need not specify by title each movie to be seized cuts against Supreme Video's arguments in this case.

■ This line of reasoning also speaks to a slightly different issue Supreme Video raised, whether the viewing of a film that is part of a series is sufficient probable cause to seize all movies from the series. Supreme Video makes an interesting argument for the proposition that police must view more than one film to have probable cause to seize all movies in a series, stating in its brief that "[t]his Court should hold that a judicial officer who has read an affidavit describing only one videotape from a series issued under a generic title has not 'focused searchingly on the question of obscenity' ... as to all other videotapes in the series...." Even if we were to repeat those precise words as our own in this opinion, it would be mere dicta, for the relevant question in a Section 1983 action is whether the law as Supreme Video

---

5. The Ninth Circuit has held that when a warrant authorizes seizure of a particular volume number (e.g. *Home Movie Productions III*), seizing other volumes (e.g. *Home Movie Productions I, II,* and *IV*) is impermissible. *United States v. Sherwin,* 572 F.2d 196, 198–201 (9th Cir.1977), *cert. denied* 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978). In *Sherwin,* the court reasoned that because the warrant listed a particular volume number only, other volumes were "undescribed" by the warrant and their seizure therefore was impermissible. *Id.* at 201. In this case, however, the warrant referred to the names of the two series generally rather than specific volume numbers within the series, an important distinction.

6. This case presents the added difficulty of Schauz having known that *Wall to Wall the Way You Like It* and *Home Movie Productions* were multi-volume works at the time the magistrate judge issued the warrant. That concern is discussed in the second subsection of this opinion, *infra.*

thinks it should be *was clearly established* at the time of the seizure.

Supreme Video failed to even argue that under the law as it existed at the time of the seizure, probable cause did not exist. Supreme Video cited two cases that were merely persuasive authority, *United States v. Sherwin,* 572 F.2d 196 (9th Cir.1977), *cert. denied* 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978), and *United States v. Guarino,* 729 F.2d 864 (1st Cir.1984), and one Supreme Court case, *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). *Lo–Ji Sales* invalidated a warrant authorizing the seizure of materials "similar" to those described in the warrant; it did not reach the issue of whether viewing a movie within a series constitutes sufficient probable cause to seize all movies within the series. Such a proposition never has been established clearly as controlling law within this circuit. Because *Lo–Ji Sales* did not reach the issue presented in this case, and because *Sherwin* and *Guarino* were merely persuasive,[7] we conclude that at the time Schauz executed the warrant, it was neither clearly established that warrants must specifically list each volume number of movies to be seized, nor that the viewing of one movie within a series is insufficient probable cause to permit seizure of the entire series.

## 2.

■■■ Our conclusion in the preceding subsection does not end our inquiry regarding personal capacities. In that subsection we asked whether it was clearly established that, as a general matter, warrants are insufficiently particular if they identify the title of a

series to be seized without identifying each volume number. There remains the second concern, however, of whether Schauz' failure to inform the magistrate judge that his affidavit was referring to the title of the series, rather than the specific title of a movie, exposes him to personal liability.

This is where the "copies" versus "volumes" issue becomes relevant. Police officers may not intentionally or recklessly misrepresent material information to magistrate judges, and misrepresentations encompass omissions. *See Olson v. Tyler,* 771 F.2d 277, 281 n. 5, n. 6 (7th Cir.1985) (securing warrant through intentional or reckless omission of material facts can give rise to civil damages in a Section 1983 action). In this case, Schauz apparently believed that in using the word "copies" in his affidavit, he was including all works within the series. We must ask whether that supposition was objectively unreasonable.

■■■ Given the unique circumstances of this case, Schauz' assumption was not objectively unreasonable. Although most dictionaries do define copies as duplicates and volumes as works within a series, our test is not how Webster would have worded the affidavit. Rather, we must examine how a reasonable police officer would have drafted the affidavit. A reasonable officer easily could have thought that the word "copies" made it clear that more than one movie was in each series, just as a person at a library might ask for the most recent five copies of *Time Magazine*; such a person would be surprised indeed if the librarian delivered five issues from the same, most recent, publication date.[8] Because *Wall to Wall the Way*

7. Additionally, as with *Lo–Ji Sales,* neither of the two persuasive authorities directly addressed the issue of whether a warrant that identifies the title of a movie series permits seizure of all movies within the series.

8. From a legalistic perspective, the magistrate judge must have believed that the word "copies" in the warrant meant different volumes within a series. When an obscenity determination has not taken place before the seizure of a movie, the police may seize only one video cassette of each different movie, so long as they are seizing the movie or movies for the purpose of preserving them as evidence in a criminal proceeding and

so long as the seizure is based on probable cause. *Fort Wayne Books v. Indiana,* 489 U.S. 46, 63, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989). In this case, a prior obscenity determination had not yet taken place. Thus, a cold examination of the warrant would require the conclusion that "copies" really meant "volumes" despite the dictionary definitions of the words. Disrupting this logical exercise is the fact that Schauz seized duplicates of many movies within each series, all of which the City of Oshkosh subsequently returned to Supreme Video. Nevertheless, Schauz' error with respect to seizing duplicates of each movie does not make any less reasonable his belief that "copies" included "volumes."

*You Like It* and *Home Movie Productions* are no doubt less well known to be multivolume works than *Time Magazine,* Schauz should have informed the magistrate judge that the affidavit referred to two series. Nevertheless, Schauz' mistake was an objectively reasonable one, and we therefore agree with the district court that the defendants should be immune from civil liability.[9] We should note, however, that the term "volumes" is grammatically correct when referring to movies within a series, and although Schauz' usage was objectively reasonable at the time, after the publication of this opinion police officers should confine future usages of the terms "copies" and "volumes" in affidavits supporting search warrants to their more traditional dictionary definitions.

### B. Official Capacities

### 1.

■ Although qualified immunity is a defense to actions for damages under Section 1983, the same is not true in official-capacity suits. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, we must set aside all issues of "objective reasonableness" when examining the first of Supreme Video's official capacities arguments, that the district court improperly granted summary judgment in favor of Schauz and Thome on Supreme Video's requests for injunctive relief. Supreme Video cites as error the district court's failure to determine whether Schauz had probable cause to seize video cassettes other than the first volumes in the *Wall to Wall the Way You Like It* and *Home Movie Productions* series.

■ Past Supreme Court decisions clearly set forth when police may seize movies without a prior determination of whether the films are obscene. First, a police officer may seize single copies of films (meaning if a store had three *Rocky II* movies on its shelf,

the police may seize only one) for the purpose of preserving them as evidence in a criminal proceeding so long as the seizure is based on probable cause. *Fort Wayne Books v. Indiana,* 489 U.S. 46, 63, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989); *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 327–28, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979); *Heller v. New York,* 413 U.S. 483, 493, 93 S.Ct. 2789, 2795, 37 L.Ed.2d 745 (1973). Second, if the police properly seize single copies, upon request of the owner there must be a prompt adversarial hearing on the issue of whether the movies are in fact obscene. *Lo–Ji Sales,* 442 U.S. at 327–28, 99 S.Ct. at 2324–25; *Heller,* 413 U.S. at 493, 93 S.Ct. at 2795. Thus, Supreme Video is entitled to the return of its seized movies if: (1) the police seized more than single copies; (2) the seizure was not for the purpose of preserving the films as evidence in a criminal proceeding; (3) the seizure was not based on probable cause; or (4) there was not a prompt adversarial hearing after Supreme Video requested one. *Fort Wayne Books,* 489 U.S. at 63, 109 S.Ct. at 927; *Lo–Ji Sales,* 442 U.S. at 327–28, 99 S.Ct. at 2324–25; *Heller,* 413 U.S. at 493, 93 S.Ct. at 2795.

Regarding the first question, whether Schauz seized more than single copies, the record shows that he did, but also that the City subsequently returned all duplicates and some originals to Supreme Video. Supreme Video obviously is not entitled to an injunction for the return of videotapes already in its possession. If Schauz seized Supreme Video's only copy of any tape, upon proper request the trial court should allow the duplication of a copy of the film so that the movie is available for viewing pending an obscenity determination. *Heller,* 413 U.S. at 492–93, 93 S.Ct. at 2794–95. We note this not because the record demonstrates that Schauz seized Supreme Video's only copy of a tape—the record is silent on that point—but to

9. Supreme Video argues that the district court erred by following the same decisional process we followed in this opinion, namely by deciding the qualified immunity issue without deciding whether Schauz actually violated a constitutionally guaranteed right. The cases Supreme Video cites, such as *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), however, do

not hold that courts must address the question of a right *before* speaking to whether that right was clearly established. Rather, *Siegert* held only that both issues are necessary for a successful Section 1983 action. The Federal Reporters are expanding quickly enough without our addressing issues that will not affect the outcomes of our decisions.

make it clear that a seizure made prior to an obscenity determination cannot be tantamount to a prior restraint. Nevertheless, even if Schauz seized Supreme Video's only copy of a film, Supreme Video has the burden to demonstrate that fact, *id.*, and to this point Supreme Video has not attempted to meet that burden.

Secondly, Supreme Video never alleged that Schauz seized its films for anything other than evidentiary purposes. In fact, Supreme Video concedes in its brief that the City seized the videotapes because it was anxious to begin criminal prosecutions under the recently-upheld Wisconsin obscenity statute. Thus, Supreme Video is not entitled to the return of its tapes on the grounds of an improper motive for the seizure.

Regarding the third question of whether probable cause existed for the seizure, the district court failed to answer this question. Instead, the district court confined itself to noting that Wisconsin law has a procedure for obtaining the return of seized property. *See* Wisconsin Statute § 968.20(1). Supreme Video need not use that procedure, however, if Schauz seized its video cassettes without probable cause before a determination of whether the movies were obscene. Litigants need not exhaust state remedies before pursuing Section 1983 actions, *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), and Supreme Video therefore was entitled to seek the return of its videotapes based on a lack of probable cause. The district court must now decide that issue.

Finally, although Supreme Video did request a prompt adversarial hearing, it did so in only the literal sense—writing to Schauz, Thome, and Paulus to request a hearing. *Heller,* however, intended nothing quite so casual when it discussed "requesting" an adversarial hearing. As the district court correctly explained, Supreme Video had the burden to move in the Circuit Court of Winnebago County for a prompt adversarial hearing, *see Heller,* 413 U.S. at 490–91, 93 S.Ct. at 2793–94, a burden it failed to meet. That

avenue remains open for Supreme Video to pursue.

### 2.

■ Supreme Video also asserts that the district court erred by granting summary judgment against Supreme Video on its request for a declaratory judgment. *See* 28 U.S.C. § 2201. We hesitate to speak to this point given that Supreme Video referred to the declaratory judgment issue only in passing in its brief. Nevertheless, the issue merits attention.

As previously noted, qualified immunity is not a defense in official-capacity suits. *Graham,* 473 U.S. at 167, 105 S.Ct. at 3105. Thus, Supreme Video may be entitled to declaratory relief if Schauz executed an unconstitutional search warrant, irrespective of whether he acted reasonably in doing so. *See id.* If Supreme Video could establish that Schauz and Thome violated its rights, it would be required to take the further step of establishing the appropriateness of declaratory relief. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).[10]

The district court opinion never addressed the questions of the constitutionality of the search warrant and the appropriateness of declaratory relief. *See Supreme Video,* 808 F.Supp. at 1386–99. Despite that, the district court granted summary judgment in favor of Schauz and Thome on all of Supreme Video's claims, including the request for declaratory relief. *Id.* at 1399. Because the district court never addressed the issues central to a request for declaratory relief, it cannot be said that Schauz and Thome were "entitled to a judgment as a matter of law" on that claim. *See* Fed.R.Civ.P. 56(c). If Schauz executed the warrant in a constitutionally sufficient fashion, or if Supreme Video fails to establish the appropriateness of declaratory relief, the district court must deny Supreme Video's request for declaratory relief. If, on the other hand, there was a constitutional violation and declaratory relief

---

**10.** The test for whether to grant a declaratory judgment is "whether the facts alleged, under all the circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Maryland Casualty,* 312 U.S. at 273, 61 S.Ct. at 512.

is appropriate, the district court must grant the request for declaratory relief. In either event, the issue is one that the district court must address specifically, and we therefore are forced to conclude that the district court erred in dismissing Supreme Video's request for declaratory relief.

Accordingly, the judgment of the district court is AFFIRMED as to the dismissal of personal capacity claims against all defendants, REVERSED as to the dismissal of Supreme Video's request for injunctive and declaratory relief, and REMANDED for a determination of whether Supreme Video is entitled to injunctive and declaratory relief.