# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1753EM

_____

| | |
|---|---|
| B.A.P., Inc., | * |
| | * |
| Appellant, | * |
| | * |
| | * |
| v. | * On Appeal from the United |
| | * States District Court |
| | * for the Eastern District of |
| Robert P. McCulloch, Prosecuting | * Missouri. |
| Attorney of St. Louis County, Mo.; | * |
| Ronald A. Battelle, Col., Chief of | * |
| Police, St. Louis County Police | * |
| Department, | * |
| | * |
| Appellees. | * |

_____

Submitted: November 16, 1998

Filed: February 26, 1999

_____

Before RICHARD S. ARNOLD and FAGG, Circuit Judges, and DAWSON,[1] District
    Judge.     _____

RICHARD S. ARNOLD, Circuit Judge.

---

[1]The Hon. Robert T. Dawson, United States District Judge for the Western
District of Arkansas, sitting by designation.

B.A.P., Inc., filed this complaint for declaratory judgment and injunction to determine whether a Missouri statute which sets out the procedure for obtaining search warrants for obscene material is unconstitutional on its face or as applied. The District Court[2] found that the failure of the Missouri statute to include the procedural safeguards urged by B.A.P. did not render the statute unconstitutional, and that the statute as applied to B.A.P. conformed to all relevant constitutional standards. B.A.P., Inc. v. McCulloch, 994 F. Supp. 1131 (E.D. Mo. 1998). We affirm.

I.

The St. Louis County Police Department began investigating B.A.P., Inc., for suspected violations of the Missouri obscenity statutes[3] in the late spring of 1997.

---

[2]The Hon. Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

[3]Mo. Rev. Stat. § 573.010(8) provides the following definition of obscenity:

[A]ny material or performance is obscene if:

(a) Applying contemporary community standards, its predominant appeal is to prurient interest in sex; and

(b) Taken as a whole with the average person, applying contemporary community standards, it depicts or describes sexual conduct in a patently offensive way; and

(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value.

Mo. Rev. Stat. § 573.030 provides that "A person commits the crime of promoting . . . obscenity in the second degree if, knowing its content or character, he:

(1) Promotes or possesses with the purpose to promote any obscene material

-2-

Over several occasions, undercover officers purchased a total of eight videos and three magazines from a business operated by B.A.P. known as California Erotic Novelties located in an unincorporated area of St. Louis County. After watching the videos and looking through the magazines, the officers consulted with the St. Louis County Prosecuting Attorney's Office and decided to apply for a search warrant under Mo. Rev. Stat. § 542.281.[4] The application for the search warrant, the accompanying

_____

for pecuniary gain . . .."

> [4]Mo. Rev. Stat. § 542.281. <u>Obscene matter, search warrant, procedure for obtaining--application for warrant content--adversary hearing required, when--alteration of material after notice of hearing or execution of warrant prohibited</u>
>
> 1. Any police officer, sheriff or deputy sheriff may make application for the issuance of a search warrant to search for and seize:
>
> > (1) Obscene matter being held or displayed for sale, exhibition, distribution, or circulation to the public . . ..
>
> 2. A warrant to search for and seize the matters and property described in subsection 1 of this section as evidence in a criminal proceeding pursuant to chapter 573, RSMo, may be issued by a judge of the circuit court in the county or judicial district in which the alleged matter or property is located. . . .
>
> 3. The application and the warrant, if issued, shall designate precisely by title, or otherwise, each item to be searched for and seized.
>
> 4. No warrant shall be issued to search for and seize any item unless the judge determines there is probable cause to believe that such item is obscene as defined in section 573.010, RSMo, and is being displayed, sold, exhibited, distributed, or circulated to the public . . ..

* * *

-3-

affidavit of the investigating officer, Detective Ostendorf, and the warrant itself, all state that "[o]bscene material in violation of RSMo. 573.030 is being kept and/or displayed upon the premises" of California Erotic Novelties. Each of these documents contains identical lengthy definitions of "obscene" based on the definition used in the Missouri statute. At the conclusion of these definitions the documents state, "said video cassettes and magazines are proscribed by Section 573.030 RSMo . . . as follows: [at this point the titles of the various materials are listed]." Each document then continues, "and all other items contained in and on the premises . . . that depicts [sic] sexual conduct as follows . . .." The definition of obscene used above is then substantially repeated.

Ostendorf's affidavit contains a brief description of several of the videos detailing the nature of the sexual conduct depicted, and recounts statements made to her during her undercover visit to California Erotic Novelties by its employees that the videos were rated "XXX" and were "hard-core pornography." Ostendorf also attached photocopies of the video box covers and front covers of the magazines to her affidavit. Ostendorf and a representative of the Prosecuting Attorney's Office then presented the application and affidavit to Circuit Judge O'Toole, who examined the materials, briefly questioned Ostendorf, and then issued the warrant. Prior to the execution of the warrant, members of the St. Louis County Police Department, after consultation with the St. Louis County Prosecuting Attorney's Office, met in order to discuss the criteria for seizure under the warrant. During the course of this meeting, a "three-pronged test" was referred to and was later used by the officers conducting the search. Under this test, the material had to 1) be "XXX-rated;" 2) have genitalia displayed on the covers or within the material seized; and 3) have

---

8. If the purpose of applying for a warrant is to search for and seize obscene material for other than evidentiary purposes, the judge shall hold an adversary hearing to determine whether such matter is obscene before issuing a warrant. . . .

sexual acts portrayed in a "non-literary or artistic manner."

Using this guideline, the officers conducted a search of California Erotic Novelties on September 16, 1997, that lasted approximately ten hours and resulted in the seizure of 4189 videos and 2118 magazines. On October 20, 1997, the State of Missouri, St. Louis County, filed an eleven count information against B.A.P. and three of its employees for promoting obscenity in the second degree. Counts One through Eight and Count Eleven arose from various undercover sales in May, July, and August of 1997; Counts Nine and Ten were based on a video and magazine seized during the execution of the search warrant.

On October 23, 1997, the District Court held a hearing on the preliminary injunction. Peter Pigman, an employee of B.A.P. who was on duty at California Erotic Novelties at the time of the search, testified that after the search was completed, the store was virtually cleaned out of merchandise (Tr. 24). Pigman also testified that approximately seventeen previously unopened boxes full of videos were seized, as well as multiple copies of many videos and magazines. Detective Ostendorf confirmed during her testimony that she seized several boxes of previously unopened videos after opening the boxes and examining the titles (Tr. 93), and also testified that, to her knowledge, the search warrant gave her the authority to seize multiple copies of videos and magazines (Tr. 98). As to the manner in which the material was seized, Ostendorf stated:

> With the magazines, I personally seized all of those, so how I did it is: I didn't open the magazines and read them. All I did is anything on the front cover that either showed a sex act in a graphic nature, in an offensive nature type, or it showed genitalia in a non-artistic form, was seized.

(Tr. 119.) Ostendorf further testified that the same basic procedure was followed for

-5-

the seizure of the videos, that is, the decision on whether to seize was made after a brief perusal of the pictures on the box.

The attorney for B.A.P. then questioned Robert P. McCulloch, Prosecuting Attorney of St. Louis County, about whether it would be necessary to introduce anything other than the actual videos sold to the undercover officers in order to prosecute the misdemeanor counts. McCulloch explained that the charge of promotion of obscenity requires the State to prove that the defendant knew the character and content of the material, and that the other tapes might be needed to show that knowledge. In addition, McCulloch speculated that the other tapes could potentially form the basis of additional charges. The following exchange then ensued:

> Q:    You are not telling the Court that it was necessary for the police to go in and seize every video in the store in order to prove these eight misdemeanor counts. That isn't your testimony today, is it?
>
> A:    There are ten counts there, 10 or 11.
>
> Q:    Let's just deal with the first eight.
>
> A:    Well, with the first eight, they deal with dates preceding the execution of the search warrant -- I am sorry, the first nine I believe do, maybe the first eight -- deal with dates preceding the search warrant.
>
> However, our evidence, and I'm not prepared to try the case right now, but essentially our evidence would show that this conduct was continuing at least from the first time the officers went in in May throughout the entire summer.
>
> I think that evidence is admissible for the purposes that I stated earlier, to show that the individuals involved in the sale were aware of the nature and character and content of the material that they were issuing or that they were promoting, and other charges may result from

the items that were seized.

In fact, other charges did result from the items that were seized on the 15th of September, when the warrant was executed.[5] There may be additional charges.

Q:     Let me ask you this question:  Are you holding for evidence to be used in Counts 1 through 8, which deal with offenses that took place [other] than on May the 15th of 1997 and August the 18th, are you holding as evidence these four – over 4,000 videos that were seized on September the 16th?

A:     Not solely for that purpose, but yes.

Q:     Not solely for that purpose?

A:     Correct.

(Tr. 145-47.)

## II.

B.A.P. claims that the statute which authorized the warrant, Mo. Rev. Stat. § 542.281, is facially unconstitutional on three grounds, and each will be addressed in turn.[6]

---

[5]Counts Nine and Ten resulted from items seized on the day of the search, which was actually September 16, 1997.

[6]As noted, B.A.P.'s initial action, filed on September 25, 1997, prior to the filing of the information, challenged the constitutionality of the statute as written and as applied.  In this appeal, B.A.P. limits its arguments to the facial validity of the statute only.

A.

B.A.P. first argues that the statute is unconstitutional because it fails to distinguish adequately between "mass seizures" and "limited evidentiary seizures." As noted above, the Missouri statute sets out two different procedural paths for the seizure of obscene materials, depending on the purpose of the seizure. Under Mo. Rev. Stat. § 542.281.8, if the warrant is for "other than for evidentiary purposes" then the statute requires written notice and an adversarial hearing to determine the issue of obscenity before the judge may issue the warrant. The problem with this scheme, B.A.P. insists, is that there is nothing in the language of the statute itself to prevent an overzealous prosecutor from conducting a mass seizure without providing the required procedural safeguards by simply disguising it as an evidentiary seizure. As B.A.P. correctly points out, the Constitution requires additional procedural safeguards when obscene material is seized as contraband in a forfeiture proceeding, as opposed to when it is seized as evidence of a crime, in this case a misdemeanor violation, promotion of obscenity in the second degree.[7] According to B.A.P., the Prosecuting Attorney's Office and the St. Louis County Police Department essentially conducted a raid on California Erotic Novelties and seized most of its inventory in an attempt to force it out of business. B.A.P. argues that McCulloch's testimony, the fact that the seizure practically depleted the entire inventory of California Erotic Novelties, and the cursory fashion in which the officers determined what items would be seized, all indicate that the seizure was not just to gather evidence, but also to restrain the free flow of presumptively protected material. Furthermore, B.A.P. claims that this mischief was a result of an infirmity in the statute. As B.A.P. sees it, in order to pass constitutional scrutiny the statute must provide some constraint on the authority of

---

[7]In Marcus v. Search Warrant of Property at 104 East Tenth St., Kansas City, 367 U.S. 717 (1961), and A Quantity of Copies of Books v. Kansas, 378 U.S. 205 (1964), the Court held that a prior judicial determination of obscenity was required before any large-scale seizure of materials for the purpose of their destruction as contraband. Marcus, 367 U.S. at 731-32; A Quantity of Books, 378 U.S. at 210.

the issuing judge not to exceed the limited scope of permissible evidentiary seizures, or must require a neutral, detached magistrate to make the determination as to what type of seizure the State is seeking.

We disagree. The District Court found that it was "undisputed that the expressed purpose for the issuance of the subject warrant was to seize obscene materials for evidentiary purposes," and we may not set aside this finding unless it is clearly erroneous.[8] In any event, B.A.P. asks too much. Its argument, in essence, is that we should invalidate the statute for failing to prohibit potential abuses by prosecutors who use, or misuse, procedures provided for in the statute. This is not the way to address such misconduct. No statute can absolutely eliminate all possibility of abuse in its administration, and the statute before us does clearly distinguish between seizures for evidentiary purposes and other seizures. It is true that in the area of First Amendment rights, the Supreme Court has permitted overboard regulations of speech to be invalidated on their face because of "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 799 (1984) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)). However, there must be "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections . . .." Id. at 801. No such danger exists in this case. As B.A.P. itself points out, the danger is overzealous prosecution, not a defect in the statute. If such misconduct does occur, the aggrieved

---

[8]B.A.P. insisted in both its written and oral arguments before this Court that McCulloch's testimony clearly indicates that the State was not motivated solely to gather evidence. In support of this view, B.A.P. cited the final portion of the above quoted exchange during the hearing. However, when read in context, we do not think the admission is so clear. McCulloch had already stated that the other videos might result in additional charges, and that the State might need to introduce evidence of defendant's knowledge or intent.

party who diligently pursues its rights has a variety of protections. Among other things, a bookseller may go to court and secure the return of all multiple copies (all copies beyond a single copy of each item). That in fact happened here: the District Court ordered all multiple copies returned, and defendants have complied.

B.

B.A.P. next argues that the statute is invalid even if the seizure was purely for evidentiary purposes, because it fails to provide a procedural avenue for requesting a prompt, post-seizure adversarial hearing to determine whether the materials seized are obscene. B.A.P. claims that without such a device it is suspended in "jurisdictional purgatory" until the initiation of a criminal proceeding (which occurs at the discretion of the prosecutors any time before the statute of limitations runs on the offense), at which time it could seek return of its property by motion in the criminal case. B.A.P. argues that in the meantime it has no procedural recourse.

Again, we disagree. It is true that the Constitution requires that a prompt hearing be available to B.A.P., but the burden is on B.A.P. to request such a hearing – something it never did. Heller v. New York, 413 U.S. 483, 490-91 (1973); Supreme Video, Inc. v. Schauz, 15 F.3d 1435, 1443 (7th Cir. 1994). B.A.P.'s argument that it had no procedural avenue by which to request such a hearing is unconvincing, since it never made the attempt. A constitutional right does not need enabling legislation to provide for its enforcement, Merrell v. All Seasons Resorts, Inc., 720 F. Supp. 815, 818 (C.D. Cal. 1989), and we refuse to invalidate a statute for its lack of a particular safeguard when the party making the request was never denied relief. B.A.P. could have moved the judge who issued the warrant to provide an adversary hearing on the issue of obscenity, and we are not willing to assume that the judge would not have held such a hearing.

C.

B.A.P.'s final claim is that the statute is unconstitutional because it permits the seizure of multiple copies of allegedly obscene material. B.A.P. insists that this deficiency allows materials to be taken completely out of circulation before a judicial determination on the issue of obscenity. The State argues there is no requirement that every warrant limit evidentiary seizures to only one copy of every item, and that, in any event, such a limitation is not a necessary component of the search and seizure statute. The District Court, after conducting a thorough review of the Supreme Court cases in this area, concluded that the statute's failure expressly to include such a limitation did not render it unconstitutional. The Court did, however, recognize at the close of its order that since "there is some evidence that multiple copies of videos and magazines were seized . . . [i]f the plaintiff can identify the multiple copies taken, and requests their return, the defendants shall return the multiple copies seized. If a single copy was seized, and if the plaintiff can so identify it and requests its return, the defendants shall make a copy of the video so that the video is available for viewing pending an obscenity determination."[9]  994 F. Supp. at 1146. As we have noted above, this relief was later obtained by B.A.P.

In Heller v. New York, 413 U.S. 483 (1973), the manager of a movie theater who had been found guilty of promoting obscenity appealed the denial of his motion to dismiss the indictment on the ground that the seizure of the film, which formed the

---

[9]In a separate section of the District Court's opinion the Court acknowledged that both Pigman and Detective Ostendorf had testified that multiple copies were seized. But neither was able to identify any specific video or magazine of which multiple copies were taken. And, because there was no evidence that all copies of any particular video or magazine were seized, the Court found that B.A.P. had failed to carry its burden of showing that the failure of the warrant to have a "one copy" limitation constituted an impermissible prior restraint. Id. at 1145; see also New York v. P.J. Video, Inc., 475 U.S. 868, 875 n.6 (1986).

basis of the conviction, violated the Constitution because it was not preceded by an adversary hearing on the issue of probable obscenity. The Court rejected this argument, holding that "there is no such absolute right where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution." Id. at 488. Using language that B.A.P. now relies on heavily, the Court then differentiated between the types of seizures at issue in Marcus and A Quantity of Books, which did require a pre-seizure hearing, and the one which Heller complained of, noting that a seizure for the purpose of destroying the materials or blocking their distribution is a "very different matter from seizing a single copy of a film for the bona fide purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film." Id. at 492 (emphasis supplied). The Court's reasoning, it seems to us, is based on several factors, none of which necessarily compels a "one copy" limit on all future evidentiary seizures. First, there had already been a determination of probable cause by a neutral magistrate; second, the State of New York stood ready to provide a prompt post-seizure hearing; and third, the Court mandated that if there were a showing that other copies of the film were not available, "the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned." Id. at 492-93 (footnote omitted). In its discussion, the Court also included a footnote which stated in part:

> This is not to say that multiple copies of a single film may be seized as purely cumulative evidence, or that a State may circumvent Marcus or A Quantity of Books by incorporating, as an element of a criminal offense, the number of copies of the obscene materials involved.

Id. at 492 n.8.

-12-

In Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46 (1989), the Court restated the holding in Heller, using somewhat broader language:

[In Heller,] we concluded that until there was a "judicial determination of the obscenity issue in an adversary proceeding," exhibition of a film could not be restrained by seizing all the available copies of it. The same is obviously true for books or any other expressive materials. While a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, the publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing.

Id. at 63 (quoting Heller, 413 U.S. at 492-93).

The Seventh Circuit relied on the above cited passages to hold:

Supreme Court decisions clearly set forth when police may seize movies without a prior determination of whether the films are obscene. First, a police officer may seize single copies of films (meaning if a store had three Rocky II movies on its shelf, the police may seize only one) for the purpose of preserving them as evidence in a criminal proceeding so long as the seizure is based on probable cause.

Supreme Video, Inc. v. Schauz, 15 F.3d 1435, 1442 (7th Cir. 1994). We need not decide in this case whether it is always unconstitutional to seize more than one copy for evidentiary purposes. The focus of this case is on the facial validity of the Missouri statute, not, as in Supreme Video, the actual conduct of the officers in executing the warrant. If there is a one-copy limitation, it may be enforced by suit against the officers. The limitation does not have to appear on the face of the statute. Indeed, in this very case the District Court ordered the return of all multiple copies, and there is no proof that sale of any particular item was ever completely restrained

-13-

because all copies of the item had been seized.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.