994 F.Supp. 1131 (1998)
B.A.P., INC., Plaintiff,
v.
Robert P. McCULLOCH, et. al., Defendants.
No. 4:97CV1978SNL.
United States District Court, E.D. Missouri, Eastern Division.
February 11, 1998.
*1132 Murry A. Marks, Jason S. Marks, Law Office of Murry A. Marks, St. Louis, MO, for Plaintiff.
Michael A. Shuman, St. Louis County Counselor, Clayton, MO, for Defendants.

MEMORANDUM OPINION
LIMBAUGH, District Judge.
Plaintiff has filed this declaratory judgment action challenging the constitutionality of Missouri statute, § 542.281 R.S.Mo., and a search warrant that was issued and executed pursuant to this statute. It seeks to permanently enjoin, on constitutional grounds, the implementation of § 542.281 R.S.Mo. which authorizes the application and issuance of a search warrant to search and seize items preliminarily adjudicated to be "obscene", for evidentiary purposes.[1] Plaintiff further seeks, on constitutional grounds, to void the search warrant issued and executed on its place of business, resulting in the confiscation of numerous items. Finally, plaintiff seeks the recovery of those items seized as the result of the execution of the subject search warrant.
On October 23, 1997 a one-day bench hearing was held in this case. Counsel for the parties were present and stipulated to the Court that the proceedings constituted a *1133 hearing on the merits regarding a permanent injunction, rather than an abbreviated hearing typical for consideration of a preliminary injunction. This Court, having now considered the pleadings, the testimony of the witnesses, and the parties, exhibits[2], and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

FINDINGS OF FACT
Plaintiff B.A.P., Inc. is a Missouri corporation operating an "adult business" known as California Erotic Novelties[3] on West Florissant Ave. in the unincorporated portion of St. Louis County.
Defendant Robert P. McCulloch is the duly elected Prosecuting Attorney for St. Louis County, Missouri. Colonel Ronald Battelle is the Chief of Police in charge of the St. Louis County Police Department.
In May of 1997, Donna Ostendorf, a detective with the criminal investigations, drug enforcement, and special investigations division of the St. Louis County Police Department, became involved in an investigation of the plaintiff's business California Erotic Novelties for its rental and/or sale of possibly obscene videocassette movies (hereinafter referred to as simply "videos"), books, and magazines. In connection with this investigation, Detective Ostendorf herself bought two (2) videos and three (3) magazines, and viewed several additional videos bought by other undercover officers participating in the investigation, from California Erotic Novelties on two (2) occasions.[4] Each video was viewed in its entirety by Detective Ostendorf. For each video, she summarized the theme of, and conduct depicted in the movie. Specifically, she tallied the number of sexual acts depicted, catagorized each sexual act by the nature of the act, and listed by gender and number the participants in each act listed. A similar process was followed in reviewing each magazine purchased and reviewed by Detective Ostendorf.
Based upon her experience in similar prior investigations, she believed that the items purchased violated Missouri's obscenity statutes, §§ 573.010 R.S.Mo. and 573.030 R.S.Mo. She contacted the St. Louis County Prosecuting Attorney's Office and informed them of her investigation's findings. She obtained permission to seek a search warrant pursuant to Missouri statute § 542.281 R.S.Mo.
On or about September 9, 1997 Detective Ostendorf prepared an application for a search warrant of California Erotic Novelties alleging that obscene materials, in the form of videocassette movies and magazines, were being rented and/or sold to the public in violation of Missouri statute § 573.030 R.S.Mo.[5] The application listed by name the *1134 eight (8) videos and three (magazines) purchased during the investigation.[6]
Detective Ostendorf attached to her application for a search warrant her affidavit stating that she had viewed all eight (8) videos and that each of them contained explicit scenes of sexual conduct (of which she described). Further stated in the affidavit was the particulars of the investigation, including statements by California Erotic Novelties' employees to Detective Ostendorf that the movies in the store were rated "XXX" and were "hard-core pornography". Also attached to the application, as well as to her affidavit, were xerox copies of the box covers of each listed video and the front covers of each listed magazine.
Subsequently, Detective Ostendorf and an assistant prosecuting attorney from the St. Louis County Prosecuting Attorney's Office, went before St. Louis County Circuit Judge Daniel O'Toole to seek the issuance of a search warrant. They presented to Judge O'Toole the application for a search warrant, Detective Ostendorf's affidavit, and the actual video cassettes' boxes[7] and magazine covers. Judge O'Toole briefly questioned Detective O'Toole about her affidavit and whether the boxes and magazine covers accurately depicted the contents of the videos and magazines. She replied in the affirmative.
Judge O'Toole, after finding that there was probable cause to believe obscene material was being kept and/or held for rent and/or sale by California Erotic Novelties in violation of § 573.030 R.S.Mo.[8], issued a search warrant.[9]
*1135 Upon the issuance of the search warrant, Detective Ostendorf first met with members of the St. Louis Prosecuting Attorney's office to discuss the execution of the search warrant; specifically the criteria to be met for the seizure of items pursuant to the search warrant. She then met with the police officers at the 1st Precinct police station assigned to execute the search warrant to discuss the logistics of the search and seizure; i.e. who would mark the seized items, who would count the items seized, who would keep the inventory list, etc. One of the officers in charge, Detective Sergeant Elze, reiterated the language of the search warrant and further set forth the police department's "three-prong test" for seizure of obscene materials: 1) the materials had to be "XXX-rated"; 2) genitalia had to be displayed on the covers of or within the materials seized; and 3) sexual acts had to be portrayed in a "non-literary or artistic manner".
On September 16, 1997 Detective Ostendorf and other police officers executed the search warrant at California Erotic Novelties. Present at the execution of the search warrant was Peter Pigman, a "manager"[10] of the store. The search and seizure lasted approximately ten (10) hours and resulted in the seizure of 4189 videos and 2118 magazines. The seizure included multiple copies of videos and magazines. The in-store stock of videos and magazines were greatly depleted. Mr. Pigman was given a receipt for the items seized. At the time of the raid, no employee (including Mr. Pigman) was arrested.
Shortly after the raid, the inventory of videos and magazines was replenished but not to the extent it was prior to the raid.
On September 25, 1997 plaintiff filed the instant complaint seeking a declaratory judgment that Missouri statute § 542.281 R.S.Mo. is unconstitutional because it fails to provide a mechanism by which an individual may request and receive a post-seizure adversary hearing on the alleged obscenity of the seized material; and further fails to limit the number of materials seized to one (1) copy per item. Plaintiff further seeks a declaratory judgment that the search warrant was constitutionally infirm because it was issued without probable cause; and is overbroad in its language. Finally, plaintiff seeks to enjoin *1136 the defendants from enforcing § 542.281 R.S.Mo. against plaintiff; and to return the seized items.
On October 20, 1997 defendant McCulloch filed an eleven (11) count information against three employees of B.A.P. as well as against the plaintiff corporation, for violation of § 573.030 R.S.Mo.[11]
At the time of the hearing, no person associated with the plaintiff or representing the plaintiff's interests, had made an oral request to or filed a written request with the St. Louis County Circuit Court for an adversary hearing on the alleged obscene nature of the material seized, nor for the return of any or all of the seized materials.

CONCLUSIONS OF LAW
Plaintiff contends that § 542.281 R.S.Mo. violates the First, Fourth, and Fourteenth Amendments, and constitutes an impermissible prior restraint because it fails to provide for a prompt, post-seizure adversary hearing to determine whether in fact the materials seized are "obscene" under Missouri law. It further contends that § 542.281 is unconstitutional because it fails to provide a limitation of one (1) copy per item for every item seized. Finally, plaintiff contends that the search warrant issued and executed pursuant to § 542.281 R.S.Mo. was done so without a proper finding of probable cause; and that the warrant is unconstitutional on its face because its language is overbroad in describing the items subject to seizure. Defendants contend that § 542.281 R.S.Mo. is not constitutionally required to contain a provision explicitly providing for a post-seizure hearing when allegedly obscene materials are seized for evidentiary purposes. They further contend that there is no constitutional "1-copy" limit for seizure of allegedly obscene materials when such materials are seized for evidentiary purposes. They further contend that the search warrant is not overbroad in its language since its language tracks the statutory definition of obscenity in Missouri, was particular as to what was to be searched and seized, and gave clear guidance to the police officers who executed it. Finally, defendants contend that sufficient information was provided to the issuing judge for him to make a finding of probable cause that plaintiff's business was renting and/or selling items in violation of Missouri's obscenity laws.
As a secondary consideration, defendants seek to have this Court dismiss plaintiff's cause of action on the basis of the principle of comity.[12]

I. Principle of Comity
In their suggestions in support of defense of comity, defendants contend that:
"Plaintiff essentially has asked this court to quash a search warrant issued by the Circuit Court of St. Louis County and to suppress evidence seized pursuant to the warrant. Defendants suggest that the Circuit Court of St. Louis County is competent to make determinations of the adequacy of the probable cause determination upon which the warrant was based, and of the conformity of the evidence seized to the parameters of the warrant. The principle of comity requires federal courts to permit state courts to perform their duty, and Plaintiffs ought to be required to file their motions in state court before running to the federal court."
After careful consideration of the matter, the Court will deny the defendants' request to dismiss this case pursuant to the principle of comity for several reasons.
Firstly, the defendants have grossly misstated the essence of this lawsuit. Plaintiff is clearly challenging the constitutionality of § 542.281, the constitutionality of the search warrant as written, and the probable cause finding by the Circuit Court for the issuance of the search warrant. This lawsuit is about *1137 the alleged denial of First and Fourth Amendment rights as regards the seizure of possibly obscene materials. This lawsuit is not akin to a motion to quash a search warrant, nor a motion to suppress evidence in a criminal proceeding.
Secondly, defendants speak to the "filing of motions" in the state court before seeking redress in the federal courts. This begs the question presently before the Court. The crux of this lawsuit is the plaintiff's contention that there is no mandated statutory mechanism in place which provides the plaintiff with the means to seek state court protection of its constitutional rights after the search warrant has been executed and the allegedly obscene materials seized.
Finally, defendants appear to contend that the principle of comity requires this court to dismiss this federal action on account of an allegedly pending state court criminal action. The defendants are mistaken as to the meaning and application of the principle of comity.
The principle of comity is a matter of respect and courtesy shown for state functions; it is not a rule of right but rather a principle of deference and good will. State ex. rel. Dykhouse v. Edwards, 908 S.W.2d 686, 689-90 (Mo.1995). What the defendants actually seek is for this Court to abstain pursuant to the abstention doctrine recognized in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Younger abstention doctrine is grounded both in federalism and comity which recognizes that "the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger, 401 U.S. at 44; see also, Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). This does not, however, dictate an automatic "blind deference" to the state courts when both federal and state interests exist in a lawsuit. "What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Younger, 401 U.S. at 44; Pennzoil, 481 U.S. at 10. Thus, application of the Younger abstention doctrine can be found not only when there are state criminal proceedings pending, but also when certain state civil proceedings are pending, "if the State's interest in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." Pennzoil, 481 U.S. at 11.
Under Younger, a federal court may decline to hear a case in which the federal court is requested to enjoin an on-going criminal or civil state judicial proceeding if 1) the proceeding provides an adequate opportunity for the state defendant (who in all probability is the federal plaintiff) to raise constitutional challenges in the state proceeding; and 2) the proceeding implicates state interests. Postscript Enterprises v. Peach, 878 F.2d 1114, 1116 (8th Cir.1989) citing Younger, 401 U.S. at 44, 49. The doctrine may be applied even in cases where only declaratory relief is sought since such relief usually has the same practical effect as a formal injunction. Warmus v. Melahn, 62 F.3d 252, 255 (8th Cir.1995).
The Court has carefully reviewed the record before it and declines to apply the Younger abstention doctrine to dismiss this case. Firstly, the state criminal action against this plaintiff (and others) was not filed until after plaintiff filed this federal action and received a hearing date. Secondly, there is nothing before this Court which informs it as to the status of this criminal action; in fact defendant McColloch testified seemingly unaware of the fact that his office had just filed the criminal charges against plaintiff. Finally, the constitutional challenge raised here cannot be adequately addressed in the state court since the primary constitutional challenge to § 542.281 is the lack of a statutorily required prompt "post-deprivation" hearing. Under the current state system, it appears that the issue of obscenity cannot be addressed until criminal charges are filed[13] or at time of trial, obstensibly *1138 via a motion to quash and suppress. This is the very point being made by the plaintiff; i.e. that the statute must provide for a prompt post-seizure hearing before the statute of limitations runs on filing a criminal charge; or at least, before the start of trial.[14]

II. Constitutionality of § 542.281 R.S.Mo.
Plaintiff requests that this Court declare § 542.281 R.S.Mo. unconstitutional because it authorizes the search and seizure of materials presumptively protected by the First Amendment without affording the property owner with a prompt, post-seizure hearing on the issue of obscenity, and further does not limit the scope of any search and seizure to only one (1) copy per item seized. Plaintiff contends that the search and seizure of materials for evidentiary purposes, as proscribed by § 542.281, constitutes an unlawful prior restraint in violation of the First Amendment.

A. Post-Seizure Hearing
It is undisputed that the expressed purpose for the issuance of the subject search warrant was to seize obscene materials for evidentiary purposes.[15] Section 542.281 R.S.Mo. reads in relevant part:
1. Any police officer, sheriff or deputy sheriff may make application for the issuance of a search warrant to search for and seize:
(1) Obscene matter being held or displayed for sale, exhibition, distribution, or circulation to the public;
----------------------------
2. A warrant to search for and seize the matters and property described in subsection 1 of this section as evidence in a criminal proceeding pursuant to Chapter 573, RSMo, may be issued by a judge of the circuit court in the county or judicial district in which the alleged matter or property is located. Except as provided in this section, the issuance of a warrant to search for and seize obscene matter shall be governed by the provisions of section 542.276. Notwithstanding subsection 3 of section 542.276, oral testimony may be considered.
3. The application and the warrant, if issued, shall designate precisely by title, or otherwise, each item to be searched for and seized.
4. No warrant shall be issued to search for and seize any item unless the judge determines there is probable cause to believe that such item is obscene as defined in section 573.010, RSMo, and is being displayed, sold, exhibited, distributed, or circulated to the public or is pornographic for minors as defined in section 573.010, RSMo, and is being displayed, sold, exhibited, distributed or circulated to minors.
5. If the item to be seized is a book, magazine, paper, or pamphlet or an item that may be photographed, a copy or photograph of the allegedly obscene item may be annexed to the application.
6. If the item to be seized is a motion picture or video cassette, written affidavits verified by oath or affirmation of law enforcement officers and city or county prosecutors may supplement the application.
7. An officer in making his application for a warrant may rely on past viewings of a motion picture film or video cassette that is the same as the motion picture film or video cassette to be seized if the film or video cassette to be seized can be identified as the same as or a copy of, the prior viewed film or video cassette by the title of the film or video cassette or the package or *1139 label on or surrounding the film or video cassette or some other manner.
8. If the purpose of applying for a warrant is to search for and seize obscene material for other than evidentiary purposes, the judge shall hold an adversary hearing to determine whether such matter is obscene before issuing a warrant ... [the remainder of this subsection is not relevant to the issues before this Court].
Section 542.281 R.S.Mo. does not contain any provision for a post-seizure hearing on the issue of obscenity when items are searched for and seized for evidentiary purposes. Plaintiff contends that a prompt, post-seizure hearing on the issue of obscenity is required pursuant to the United States Supreme Court's decision in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). The Court disagrees.
In Heller, the petitioner was the manager of a movie theater where a sexually explicit film was being shown. Exhibition of an obscene film violates New York Penal Law § 235.05. After police viewed a portion of the film, an assistant district attorney requested a New York Criminal Court judge to view it in hopes of obtaining warrants for the seizure of the film and arrest of the petitioner. After reviewing the entire film at the theater, the judge issued the requested warrants. Heller, 413 U.S. at 483.
The petitioner argued that the seizure of the film without a prior adversary hearing violated his First and Fourteenth Amendment rights. The Court held that where a film is seized for the bona fide purpose of preserving it as evidence in a criminal proceeding, and it is seized pursuant to a warrant issued after a determination of probable obscenity by a neutral magistrate, and following the seizure a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. Id., 413 U.S. at 492-93.
The issue before the Heller Court was whether there was an absolute First or Fourteenth Amendment right to a prior adversary hearing where allegedly obscene material is seized pursuant to warrant to preserve material as evidence in a criminal proceeding. Nowhere in its opinion does the Heller Court even remotely touch upon the issue of a post-seizure hearing where allegedly obscene material is seized pursuant to warrant to preserve material as evidence in a criminal proceeding. More importantly, Heller did not require a state to provide a post-seizure hearing (where allegedly obscene material is seized pursuant to a warrant for evidentiary purposes) by statute. All Heller mandated was that, in order to address First Amendment concerns, a prompt judicial determination in an adversary proceeding following the seizure be made "available at the request of any interested party". Heller, 413 U.S. at 492-93. In fact, in Heller, New York law did not provide for a post-seizure hearing but that such a hearing was available upon pretrial motions. The Court noted that petitioner never filed a pretrial motion requesting return of the film or challenging its seizure, nor did he request expedited judicial consideration of the obscenity issue. Heller, 413 U.S. at 490. The Court believed that it was the petitioner's obligation to seek pretrial review of the obscenity issue and that "the barrier to a prompt judicial determination of the obscenity issue in an adversary proceeding was not the State, but petitioner's decision to waive pretrial motions and reserve the obscenity issue for trial." Heller, 413 U.S. at 490-91.
In its Suggestions in Opposition to Defendants' Post-Hearing Supplement to Defendants' Suggestions in Oppositions to Plaintiff Is Complaint, plaintiff contends that Heller "gave a state two options: either enact a statute which, in authorizing search and seizure of allegedly obscene materials for evidentiary purposes, provides a mechanism for requesting a prompt, post-seizure adversarial hearing, or (2) provide in its statutes and rules of procedure generally a way for a person aggrieved by such a search and seizure to petition a court of competent jurisdiction for a Heller-type hearing." Id., pg. 5. Plaintiff fails to cite where in Heller this "choice" appears and the Court is unable to find such a holding anywhere within the Supreme Court's opinion. The only time the Court briefly touches upon the provision of a judicial determination after seizure, either by statute or authoritative judicial construction, is in connection with two earlier Supreme Court rulings regarding seizure of imported *1140 materials by federal customs agents and state administrative licensing of motion pictures, "both civil procedures directed at absolute suppression of the materials themselves." Heller, 413 U.S. at 489-90, n. 5 citing U.S. v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) and Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In fact, the Court went out of its way to distinguish those two cases from the Heller case. Heller, 413 U.S. at 490.
The Supreme Court has continued to view the provision of a post-seizure adversary hearing regarding seized allegedly obscene materials by warrant for evidentiary purposes as a matter to be simply available by the state and affirmatively acted upon by the property owner. In New York v. P.J. Video, 475 U.S. 868, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986), the Court, upon reviewing its prior decisions regarding the seizure of allegedly obscene materials, summarized Heller by stating that where such a seizure would merely preserve evidence for trial, "the seizure must be made pursuant to a warrant and there must be an opportunity for a prompt postseizure judicial determination of obscenity." New York v. P.J. Video, 475 U.S. at 873 (emphasis added). Once again, no hint of a statutory requirement for a post-seizure hearing in order to protect First Amendment rights. This "voluntary" nature of a post-seizure hearing is reiterated by the Seventh Circuit in Supreme Video, Inc. v. Schauz, 15 F.3d 1435 (7th Cir.1994) a case wherein a video store owner brought a § 1983 action against a police officer, chief of police, and the City of Oshgosh, Wisconsin for alleged constitutional violations in seizing allegedly obscene videos. Among its claims, the plaintiff contended that the defendants, failure to grant the plaintiff a prompt, post-seizure, judicially supervised adversary hearing regarding the alleged obscenity of the seized materials, and their execution of the warrant with the knowledge that they could not provide such a hearing, violated plaintiff's rights under the First, Fourth, and Fourteenth Amendment. Supreme Video, at 1438, n. 2. The Seventh Circuit found that "although Supreme Video did request a prompt adversarial hearing, it did so in only the literal sense  writing to Schauz, Thome, and Paulus to request a hearing. Heller, however, intended nothing quite so casual when it discussed `requesting' an adversarial hearing. As the district court correctly explained, Supreme Video had the burden to move in the Circuit Court of Winnebago County for a prompt adversarial hearing, see Heller, 413 U.S. at 490-91, 93 S.Ct. at 2793-94, a burden it failed to meet. That avenue remains open for Supreme Video to pursue." Supreme Video, at 1443. It is clear that Heller and its progeny do not establish that a state must provide, by statute, for a "prompt, post-seizure adversary hearing" when allegedly obscene materials are seized pursuant to a warrant for evidentiary purposes. All that is required is that such a hearing be made available upon request by the property owner. See, Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 62, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989) (the Court rejects the petitioner's contention that he should have been provided with a prompt, post-seizure adversarial hearing on the issue the obscenity of the materials seized because he never requested such a hearing).
In the present case, the evidence at the hearing clearly established that no one on behalf of the plaintiff BAP has made any request, by pretrial motion or otherwise, for a post-seizure hearing on the issue of obscenity with regard to the videos and magazines seized. Just as in Heller, any barrier to a prompt judicial determination of the obscenity issue in an adversary proceeding is due to the plaintiff BAP, not the defendants, since plaintiff has yet to request such a hearing.

B. "One Copy" Requirement
Plaintiff contends that § 542.281 R.S.Mo. is unconstitutional because it does not limit the number of items which may be seized to a single copy of each item. Defendants contend that any restriction on the number of copies of any single item seized is premised on the judicial admonition that material seized may not be seized to the extent that such material is taken out of circulation completely.
In the instant case, over 4000 videos and 2000 magazines, including multiple copies of these materials, were seized from the plaintiff's store. Plaintiff argues that the failure of § 542.281 R.S.Mo. to limit the seizure to *1141 only single copies of any one item renders the statute unconstitutional due to First and Fourth Amendment violations. Plaintiff relies heavily on the Supreme Court's rulings in Ft. Wayne Books v. Indiana, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989); Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); Heller, supra.; Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); and the Seventh Circuit's ruling in Supreme Video, supra.
As the Supreme Court pointed out in Heller, its earlier decision in Quantity of Books, supra. was specifically limited to the issue of whether a prior judicial determination of obscenity in an adversary proceeding was required when the seizure of large quantities of books was carried out for the sole purpose of their destruction. Heller, 413 U.S. at 491 and n. 7. The Court's concern was that without such a proceeding, where the materials were being seized as contraband and were to be promptly destroyed, that such a prior judicial determination of obscenity was necessary in order to avoid "danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books". Heller, 413 U.S. at 491 quoting Quantity of Copies of Books, 378 U.S. at 213. "Courts will scrutinize any large-scale seizure of books, films or other materials presumptively protected under the First Amendment to be certain that the requirements of A Quantity of Books and Marcus[16] are fully met." Heller, 413 U.S. at 491. Heller went on to point out that seizing films to destroy them was a vastly different matter than seizing a single copy of a film for the bona fide purpose of preserving the film as evidence in a criminal proceeding. Id., 413 U.S. at 492. The Court reasoned that other copies would be available, and if not, upon request, a copy of the seized film had to be provided to the property owner. Id., 413 U.S. at 492-93. The Heller Court did not address the issue as to whether the New York statute which provided no limitation on the number of copies of allegedly obscene material that may be seized, was unconstitutional on its face. Its holding is strictly limited to its facts that the seizure of a single copy of a film for evidentiary purposes is not tantamount to the wholesale seizure of numerous allegedly obscene materials for the sole purpose of destroying them as contraband, and the impact of that difference on the constitutional necessity of a hearing prior to seizure. Nowhere in Heller does the Court state that a statute is rendered unconstitutional because it fails to limit the seizure of allegedly obscene materials to a single copy of each item seized.[17]
In Lo-Ji Sales, Inc. v. New York, supra. the Court was primarily concerned about the seizure of allegedly obscene materials pursuant to an "open-ended" search warrant which failed to adequately describe the materials to be seized but left it up to the police officers' discretion to decide which items were likely obscene. It cites to Heller solely in support of its finding that when presumptively protected First Amendment materials are seized, they must be seized pursuant to the issuance of a search warrant based upon a finding of probable cause by a "neutral judicial officer". Lo-Ji Sales, 442 U.S. at 327. The Court found that the seizure in Lo-Ji Sales did not comply with Heller because the local Town Justice not only issued the warrant, but also took part in the execution of the warrant by the police and local prosecutor. Lo-Ji Sales, 442 U.S. at 327-28. Lo-Ji Sales does not mandate any type of numerical restriction on the seizure of allegedly obscene materials.
In Fort Wayne Books, Inc. v. Indiana, supra, two adult bookstore operators were separately charged with violating Indiana's RICO statutes.[18] In Cause No. 87-470 (Ft. *1142 Wayne), the State of Indiana and a local prosecutor filed a civil RICO action against petitioner operator of an adult bookstore alleging that it had violated Indiana's RICO statute by engaging in a pattern of racketeering activity consisting of repeated violations of Indiana's obscenity laws. Under the auspices of Indiana's CRRA statute, Indiana sought a forfeiture order of all of the petitioner's property used in the alleged racketeering activity. After hearing testimony, ex parte, the state court ordered immediate seizure of the bookstore and all of its contents. An attempt to vacate the seizure order on constitutional grounds was rejected. The Indiana Court of Appeals reversed the lower court and held that the RICO/CRRA statutes were unconstitutional. The Indiana Supreme Court reversed the appellate court and upheld the constitutionality of the statutes. Ft. Wayne v. Indiana, 489 U.S. at 46.
In Cause No. 87-614 (Sappenfield), the petitioner adult bookstore owner was charged with the misdemeanor violation of distributing obscene matter and with felony RICO violations based on these alleged predicate acts of obscenity. The trial court dismissed the RICO violations based upon a finding that the RICO statute was unconstitutionally vague as applied to obscenity predicate offenses. The appellate court reversed and reinstated the charges; and the Indiana Supreme Court declined review. Ft. Wayne v. Indiana, 489 U.S. at 46.
Although each of these cases presented constitutional challenges to Indiana's RICO and CRRA statutes, the context of the challenges were different and thus, the Supreme Court addressed different concerns. It is the Court's review of the constitutional challenge raised in Cause No. 87-470 (Ft.Wayne) which highlights the "single copy" issue promoted by the plaintiff in the instant case.
As regards Cause No. 87-470 (Ft. Wayne), the Supreme Court found that the pretrial seizure of the petitioner's bookstore and its contents was improper. The Court found that although a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, the allegedly obscene materials may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing. Ft. Wayne, 489 U.S. at 63. "Thus, while the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause (and even without a warrant in various circumstances), it is otherwise when materials presumptively protected by the First Amendment are involved." Ft. Wayne, 489 U.S. at 63-64 citing Lo-Ji Sales, 442 U.S. at 326, n. 5. "It is `[t]he risk of prior restraint which is the underlying basis for the special Fourth Amendment protections accorded searches for and seizure of First Amendment materials' that motivates this rule." Ft. Wayne, 489 U.S. at 63-64 quoting Maryland v. Macon, 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). However, the Court's admonition in this case was premised upon the fact that "the petition for seizure and the hearing thereon were aimed at establishing no more than probable cause to believe that a RICO violation had occurred, and the order for seizure recited no more than probable cause in that respect." Ft. Wayne, 489 U.S. at 64. Since there had been no preseizure hearing to establish probable cause on the issue of obscenity, the Court reasoned that probable cause to believe a RICO violation had occurred was inadequate to remove allegedly obscene books or films from circulation. Ft. Wayne, 489 U.S. at 66. Thus, the Court held that the pretrial order was improper.
In Supreme Video, supra, in discussing the defendants' liability in their official-capacity, the Seventh Circuit reviewed past Supreme Court decisions involving the seizure of allegedly obscene materials for evidentiary purposes. Citing Ft. Wayne, Lo-Ji Sales, and Heller, the appellate court stated that "[f]irst a police officer may seize single copies of films (meaning if a store had three Rocky II movies on its shelf, the police may seize only one) for the purpose of preserving them as evidence in a criminal proceeding so long as the seizure is based on probable cause." Supreme Video, at 1442. Although not one of the Supreme Court cases cited expressly places a "1 copy" limitation *1143 on seizure of allegedly obscene materials for evidentiary purposes, the Seventh Circuit extrapolated such a limitation from these cases. This Court does not believe that such an extrapolation should be made without clearly articulated guidance from the Supreme Court. What is clear from these cases are four basic principles necessary to protect the property owner's First and Fourth Amendment rights: 1) any seizure of allegedly obscene materials, for the purpose of preserving them as evidence in a criminal proceeding, must be made pursuant to a warrant issued after a judicial determination of probable cause; 2) law enforcement personnel may not seize multiple copies of any single item, if in so doing, such seizure takes the item out of public circulation completely; 3) if the property owner requests, copying of seized material must be permitted; and 4) if the property owner requests, a prompt, post-seizure judicial determination of the obscenity issue in an adversary proceeding must be made available. Anything beyond this is nothing more than mere interpretation. When the constitutionality of a state statute is at stake, this Court believes that unambiguous, straight-forward guidance from the Supreme Court is required. The fact that Missouri statute § 542.281 does not expressly limit the seizure to only "1 copy" of any item seized does not render the statute constitutionally infirm.
Furthermore, the credible evidence at trial was that although the store's inventory was virtually depleted following the seizure, the shelves were re-stocked to at least 50% of pre-seizure capacity by the following week, and any video or magazine not in stock could be readily ordered upon request. There was no evidence that any particularly identified video or magazine was "taken out of circulation completely". Granted that a seizure made prior to an obscenity determination "cannot be tantamount to a prior restraint", BAP had the burden to demonstrate this fact, and failed to meet this burden. See, Supreme Video, at 1443.

III. Constitutionality of Search Warrant
BAP contends that the warrant issued and executed is unconstitutional on its face because it is "overbroad" in that it permits the seizure of any materials the police officers deem "indecent", "lewd" or "immoral". It further contends that the statute is overbroad in that it fails to contain any language limiting seizure to single copy of any seized item. Finally, BAP contends that the warrant was issued without a sufficient showing of probable cause.

A. Particularity of the Search Warrant
BAP first claims that the search warrant is facially unconstitutional because its description of material subject to seizure is too broad. BAP contends that by using terms such as "indecent", "lewd", and "immoral", the warrant includes the seizure of materials protected by the First Amendment despite their sexual content.
In Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States Supreme Court set forth the three-part test of obscenity: 1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; 2) whether the average person, applying contemporary standards, would find that the work depicts or describes, in a patently offensive way, specified sexual conduct; and 3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. Id., 413 U.S. at 24, 30; see, U.S. v. Easley, et al., 927 F.2d 1442, 1444 (8th Cir.1991) (adopting and setting forth the Miller test of obscenity). Missouri's statutory definition of obscenity tracks the three-part test of Miller, and plaintiff does not challenge the constitutionality of Missouri's obscenity statute, § 573.010 R.S.Mo. The search warrant mirrors the language of Miller, supra, and § 573.010 R.S.Mo. Thus, so far as the search warrant contains language setting forth the three-part test of Miller, as well as the statutory definition of obscenity provided by § 573.010 R.S.Mo., the warrant's language is not defective.
Due to the implication of First Amendment concerns with regard to the seizure of allegedly obscene materials, adherence to the "particularity" requirement of the Fourth Amendment must be carefully watched. Warrants to seize obscene material must provide the executing officers a guide *1144 by which to exercise informed discretion. Marcus v. Search Warrants of Property at 104 East Tenth St., Kansas City, Mo., 367 U.S. 717, 731, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). It should inform police officers what was likely to be obscene by the issuing court's reference to various sexual acts. State of Missouri v. El Dorado Management Corp., 801 S.W.2d 401, 408 (Mo.App.1990) citing Sequoia Books, Inc. v. McDonald, 725 F.2d 1091, 1093 (7th Cir.1984). When a warrant describes the sought-after contraband in the graphic terms of a state's obscenity statute, the particularity requirement of the Fourth Amendment is satisfied. See, U.S. v. Koelling, 992 F.2d 817, 821-22 (8th Cir.1993).
The subject search warrant was graphic. It listed in great detail what the sexual conduct depicted in the alleged obscene materials must involve in order to be subject to seizure. Even in Miller, supra, the Supreme Court recognized that no precise definition of obscenity can exist, nor can any state precisely regulate all publications believed to depict obscene sexual conduct. "If the inability to define regulated materials with ultimate, god-like precision altogether removes the power of the States or the Congress to regulate, then `hard-core' pornography may be exposed without limit to the juvenile, the passerby, and the consenting adult alike, as indeed, Mr. Justice Douglas contends." Miller, 413 U.S. at 27. The best the Supreme Court could do, in applying its three-part test of obscenity, was to give some examples:
"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:
(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."
Miller, 413 U.S. at 25.
The fact that the words "indecent", "lewd", and "immoral" were also included in the description does not impermissibly broaden the scope of the warrant. The warrant could not have been more explicit in its listing of sexual intercourse and the variants thereof in terms of defining sexual conduct. In fact the word "lewd" was specifically used by the Supreme Court in its own description of examples of the types of sexual conduct states could possibly regulate. As regards the terms "indecent" and "immoral", given the depth of the listing of sexual intercourse and the variants thereof, coupled with the standard of review set forth under Miller, these two terms alone do not turn this warrant into an impermissible general warrant. The Court agrees with the reasoning of the Sequoia Books court that the addition of words, such as these, that refer to values are simply surplusage that may not narrow the scope of the warrant, but definitely do not broaden it. See, Sequoia Books, at 1093. Detective Ostendorf testified that in executing the warrant, the police officers had been instructed to seize only those materials containing depictions of sexual intercourse and variants thereof as described in the warrant; and meeting the precise elements as set forth under police department policy that such materials be 1) XXX-rated; 2) male and/or female genitalia shown; and 3) the sex act was portrayed in a "non-literary or artistic" manner. There was no evidence that the police officers executing the warrant did so pursuant to any value judgment based on a personal concept of indecency or immorality.
No search warrant for the seizure of allegedly obscene materials can be drafted so as to be executed flawlessly. There is no requirement that the discretion of the law officers be completely eliminated, only that it be limited. The possibility that the police officers might seize constitutionally protected materials does exist. However, this was a warrant to search for and seize allegedly obscene materials for preservation (as evidence in a criminal proceeding); not for immediate destruction. "[I]t is a temporary removal from the owner's possession; the state cannot destroy a magazine as obscene without proving that its prurient character is unredeemed by artistic or other socially valuable properties. The slight possiblity of a temporary suppression of constitutionally protected sex magazines is not enough to *1145 invalidate the warrant under the Fourth Amendment." Sequoia Books, at 1093-94.
This warrant is very similar to a search warrant issued and executed, pursuant to § 542.281 R.S.Mo., in a case regarding the rental of allegedly obscene video cassettes, State of Missouri v. El Dorado Management Corporation, 801 S.W.2d 401 (Mo.App.1990). The Missouri Court of Appeals found the warrant to be sufficiently detailed in its reference to various sexual acts so as to provide the police officers with the limited discretion as to what was likely to be unlawfully obscene materials. El Dorado Management, at 408. Like the warrant in El Dorado Management, this warrant satisfies the particularity requirement of the Fourth Amendment.
As far as the plaintiff's contention that the warrant violates the particularity requirement of the Fourth Amendment because it fails to provide a "1 copy" limitation, this contention too fails. Having found that there is no constitutional requirement that the underlying statute (i.e. § 542.281 R.S.Mo.) provide a "1 copy" limitation, the Court refuses to place such a constitutional requirement upon any warrant issued pursuant to § 542.281 R.S.Mo.
Furthermore, although the plaintiff contends that seizure in the instant case was not limited to only one (1) copy of each video or magazine seized but instead to all copies of any video and/or magazine seized, it produced no evidence to substantiate this claim. The Court agrees that both Mr. Pigman and Detective Ostendorf testified that multiple copies were seized, but neither one identified any specific video or magazine of which multiple copies were taken. The plaintiff has not produced any evidence which identifies what videos and magazines were seized or if and how many copies of any particular video or magazine were seized.[19] There is no evidentiary record whatsoever which demonstrates to this Court, for example, whether (A) two copies of each of 1059 different magazines were seized; or (B) four copies of one magazine, in addition to 2114 different magazines, were seized. More importantly, this Court has no record before it which conclusively shows that all copies of any video or magazine were seized. Without such evidence, the plaintiff has failed to carry its burden of proof that the failure of the warrant to have a "1 copy" limitation constituted an impermissible "prior restraint".

B. Probable Cause
Plaintiff argues that the warrant was issued without a sufficient showing of probable cause. BAP specifically contends that Detective Ostendorf's affidavit in support of her application for a search warrant failed to contain sufficient details and specificity of facts which would have allowed Judge O'Toole to "reasonably" determine that the materials sought for seizure were indeed obscene.
An application for a search warrant authorizing seizure of materials presumptively protected by the First Amendment is evaluated under the same standard of probable cause used to review warrant applications in general. There is no heightened probable cause standard for the search and seizure of allegedly obscene materials. New York v. P.J. Video, 475 U.S. at 874-75. In Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), this standard was set out:
"`[T]he term "probable cause", ... means less than evidence which would justify condemnation ... It imports a seizure made under circumstances which warrant suspicion.' ... Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision.
-------------------------------------------------
We have also recognized that affidavits `are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.'

*1146 -------------------------------------------- The task of the issuing magistrate is simply to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."
Illinois v. Gates, 462 U.S. at 235, 237 (citations omitted). The Eighth Circuit Court of Appeals has embraced the "totality of circumstances" test set forth in Illinois v. Gates, supra, as a determination that, in given all of the circumstances set forth in the affidavit (including the credibility of the proponents of hearsay information), there is a fair probability that (1) the items sought are connected to criminal activity; and (2) the items sought will be found in the place to be searched. U.S. v. Edmiston, 46 F.3d 786, 789 (8th Cir.1995).
Applying this standard to the subject application and affidavit in support of application for issuance of search warrant, this Court finds that there were sufficient facts to support probable cause. The affidavit accompanying the application contained explicit descriptions of the eight (8) videos and three (3) magazines purchased by the undercover officers. All of these materials were viewed extensively by the affiant (Detective Ostendorf). The affidavit and applications stated that the materials contained various forms of sexual conduct and listed the participants by gender and number. The video cassette boxes and the magazine covers were provided to the magistrate, as well as copies of same attached to the application. The reviewing magistrate is not required to personally view the alleged obscene videos or peruse the allegedly obscene magazines in order to make a probable cause determination. New York v. P.J. Video, 475 U.S. at 874, n. 5. Furthermore, both Mr. Pigman and Det. Ostendorf testified that the video cassette boxes and magazine covers accurately depicted the contents of the videos and magazines. The affidavit and the application repeated the statements by plaintiff's employees that the videos and magazines purchased by the undercover officers (covers of which were provided to the reviewing magistrate) were "XXX-rated" and "hard-core pornography". Finally, the affidavit and the application stated that the videos were kept behind the front counter, out of access to the general public.
The reviewing magistrate had sufficient information upon which to conclude that a fair probability existed that the items sought were obscene under Missouri law, and would be found in the place to be searched. He had a sufficiently detailed affidavit and application, he had video cassette boxes and magazine covers to review, he had statements by the plaintiff's employees as to the nature of the videos bought, and he had the experience of the affiant as an investigative officer in similar criminal activity. Under the totality of the circumstances, the reviewing magistrate had probable cause to issue the warrant.
Although this Court finds that the reviewing magistrate had sufficient factual information in which to find probable cause existed that the materials sought for seizure were obscene, and that the warrant met the particularity requirements of the Fourth Amendment, there is some evidence that multiple copies of videos and magazines were seized. As stated before, at this time, the plaintiff has failed to carry its burden in showing that multiple copies of any specifically identified video or magazine were taken. If the plaintiff can identify the multiple copies taken, and requests their return, the defendants shall return the multiple copies seized. If a single copy was seized, and if the plaintiff can so identify it and requests its return, the defendants shall make a copy of the video so that the video is available for viewing pending an obscenity determination.[20]
In summary, the Court finds that § 542.281 R.S.Mo. does not violate the plaintiff's First, Fourth, and Fourteenth Amendment rights. Furthermore, the search warrant issued, pursuant to § 542.281 R.S.Mo., was issued upon a proper finding of probable cause and meets the particularity requirement of the Fourth Amendment.

*1147 ORDER

In accordance with the memorandum filed herein this day,
IT IS HEREBY ORDERED that defendants' oral motion to dismiss on the basis of comity be and is DENIED.
IT IS FURTHER ORDERED that the plaintiff's request for a preliminary and permanent injunction be and is DENIED. Judgment is entered for the defendants and against the plaintiff on the merits of the plaintiff's complaint.
IT IS FINALLY ORDERED that this cause of action is hereby DISMISSED with no further action to be taken.
NOTES
[1] Missouri statute 542.281 also authorizes the application and issuance of a search warrant to search and seize "obscene" materials for other than evidentiary purposes. However, the matter before this Court concerns only the application and issuance of a search warrant to search and seize "obscene" materials for evidentiary purposes (in a possible future criminal prosecution).
[2] The following exhibits were offered and received into evidence: Plaintiff's Exhibits 1-5, 7-10; Defendant's Exhibits A, B, C, E, F, and G.
[3] Although it appears that California Erotic Novelties sold a variety of "adult-oriented" items, relevant to this case is the rental and/or sale of adult videocassette movies, books, and magazines.
[4] May 15, 1997 and August 18, 1997.
[5] The application recited the following language: Obscene material in violation of RSMo 573.030 is being kept and/or displayed upon the premises [the premises listed was California Erotic Novelties on West Florissant Ave. in unincorporated St. Louis County] which depict sexual conduct and which are more particularly described in the affidavit; and that magazines and video cassettes for rent and/or for sale to the public and that said magazines and video cassettes are obscene in that they depict, describe, or portray, verbally or pictorially, acts of sexual intercourse, in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest in sex and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value; or other sexual conduct such as masturbation, sodomy, buggery, fellatio, cunnilingus, or any other ultimate sexual act, normal or perverted, which are portrayed in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value and said video cassettes and magazines are proscribed by Section 573.030 RSMo are as follows:

[the video cassettes and magazines bought during the undercover investigation are listed by name] ... and all other items contained in and on the premises commonly known as CALIFORNIA EROTIC NOVELTIES, 11730 West Florissant Road, St. Louis County, Mo, that depicts sexual conduct as follows:
Which depict, describe, or portray, verbally or pictorially, acts of sexual intercourse, in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest in sex and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value; or other sexual conduct such as masturbation, sodomy, buggery, fellatio, cunnilingus, or any other ultimate sexual act, normal or perverted, which are portrayed in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value.
[the remainder of the application cites the dates and times of the purchases of the videos and magazines listed and is signed by Detective Ostendorf]
[6] The names of the videos and magazines purchased during the uncover investigation and listed on the application for a search warrant are part of the evidentiary record of this case and need not be repeated here.
[7] Presented with the documentation were only the boxes which had contained each of the eight (8) videos, not the videos themselves. The same with the magazines; i.e. only the covers, not the entire magazine.
[8] Missouri statute 573.030 proscribes the criminal offense of promoting pornography in the second degree.
[9] As stated in the search warrant, Judge O'Toole having found that:

Obscene material in violation of RSMo 573.030 is being kept and/or displayed upon the premises which depict sexual conduct and which are more particularly described in the affidavit; and the magazines and video cassettes for rent and/or for sale to the public and that said magazines and video cassettes are obscene in that they depict, describe, or portray, verbally or pictorially, acts of sexual intercourse, in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest in sex and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value; or other sexual conduct such as masturbation, sodomy, buggery, fellatio, cunnilingus, or any other ultimate sexual act, normal or perverted, which are portrayed in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value and said video cassettes and magazines are proscribed by Section 573.030 RSMo are as follows:
[once again, the videos and magazines purchased during the undercover investigation are listed by name]
The search warrant further authorized the police to seize all other items that depict sexual conduct as follows:
Which depict, describe, or portray, verbally or pictorially, acts of sexual intercourse, in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest in sex and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value; or other sexual conduct such as masturbation, sodomy, buggery, fellatio, cunnilingus, or any other ultimate sexual act, normal or perverted, which are portrayed in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, predominantly appeals to the prurient interest and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value.
Finally, the search warrant directed that the search of California Erotic Novelties take place not more than ten (10) days after the issuance of the search warrant; and that if any property described in the search warrant was seized, the police were to make an inventory of such seized material and leave a receipt for the seized material with someone at the premises; and finally, that "you thereafter return the property so taken and seized by you, together with as a duly verified copy of the inventory thereof and with your return to this warrant to this court to be herein dealt with in accordance with law."
[10] The Court is unclear as to the exact nature of Mr. Pigman's association with plaintiff, and more importantly, with California Erotic Novelties. At the time in question, Mr. Pigman was the listed agent for B.A.P., Inc. d/b/a California Erotic Novelties; and the utilities for the store were under his name. However, at the hearing, he testified that he was not the owner of the store. However, he did concede to being an employee of B.A.P. and holding a position of authority as regards the operation of California Erotic Novelties.
[11] There was no evidence adduced at the hearing, or included in the post-hearing briefs, which apprised the Court as to the current status of this criminal proceeding.
[12] The principle of comity was never raised prior to the hearing. However, at the hearing, defense counsel made an oral motion to amend the pleadings to seek dismissal on the principle of comity. On October 29, 1997 defense counsel filed an amended answer raising the "affirmative defense" of comity and suggestions in support. Although the Court takes issue with the assertion of comity as an affirmative defense, and the late date at which is was raised (counsel would have been better served to have raised the matter in a timely-filed motion to dismiss), the Court agrees to address the matter.
[13] The statute of limitations for a misdemeanor obscenity charge is one (1) year, and for a felony obscenity charge, three (3) years. § 556.036 R.S.Mo.
[14] The Court recognizes that in an earlier case constitutionally challenging § 542.281 R.S.Mo., the Eighth Circuit Court of Appeals found that the Younger abstention doctrine was applicable to dismiss the federal case in favor of the state forfeiture proceeding that had been filed prior to the filing of the federal action. Postscript Enterprises v. Peach, 878 F.2d 1114 (8th Cir.1989). However, the Court believes that the facts of the Postscript Enterprises case and of the instant case differ to such a degree, that the Postscript Enterprises case is not controlling.
[15] The plaintiff has expressed its belief that the real purpose of the search warrant was to harass the plaintiff and force it out of business. However, for purposes of this opinion, the Court finds that the purpose of the search warrant was to seize obscene materials for evidentiary purposes, as opposed to the seizure of such materials for civil RICO actions or forfeiture proceedings.
[16] Marcus v. Search Warrants of Property at 104 East Tenth St., Kansas City, Mo., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961) is another case involving the seizure of a large quantity of allegedly obscene materials, without benefit of a prior judicial determination of obscenity, for the sole purpose of destroying the seized material as contraband.
[17] However, in dicta, the Heller Court did note that "[t]his is not to say that multiple copies of a single film may be seized as purely cumulative evidence, or that a State may circumvent Marcus or A Quantity of Books by incorporating, as an element of a criminal offense, the number of copies of the obscene materials involved." Id., 413 U.S. at 492, n. 8.
[18] The case(s) involved specifically the application of Indiana's RICO statute and Civil Remedies for Racketeering Activity (CRRA) statute.
[19] Plaintiff's Exhibit 4 "Return and Inventory" is the receipt given to Pigman after the seizure had concluded. It only shows the final total of videos and magazines seized (4189 videos and 2118 magazines and/or books). Nowhere does it itemize the materials seized.
[20] This holds true for any single copies of magazines seized.